UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES GALLAGHER, TRUSTEE OF THE
JAMES K. & PATSY A. GALLAGHER TRUST
and CHAZZ MCCALL, TRUSTEE OF THE
CHARLES WILLIAM MCCALL TRUST,

        Plaintiffs,

v

GRAND TRAVERSE COUNTY and THE
CHARTER TOWNSHIP OF LONG LAKE,

        Defendants.

HON. JANE M. BECKERING
U.S. DISTRICT COURT JUDGE

Case No. 1:23-cv-01363-JMB-SJB

| | |
|---|---|
| Brace Kern (P75695)<br>BEK LAW, P.L.C.<br>Attorneys for Plaintiffs<br>3434 Veterans Drive<br>Traverse City, MI 49684<br>(231) 499-5380<br>Info@BraceKern.com | Peter B. Worden, Jr. (P41899)<br>GARAN, LUCOW, MILLER, P.C.<br>Attorneys for Def. CHARTER TOWNSHIP OF<br>LONG LAKE<br>3335 W. South Airport Road, Ste. 5A<br>Traverse City, MI 49684<br>(231) 941-1611<br>pworden@garanlucow.com |
| Bradley D. Wierda (P63811)<br>SMITH & JOHNSON ATTORNEYS, P.C.<br>Attorneys for Def. CHARTER<br>TOWNSHIP OF LONG LAKE<br>534 E. Front Street<br>P.O. Box 705<br>Traverse City, MI 49685-0705<br>(231) 946-0700/(231) 946-1735 Fax<br>bwierda@smith-johnson.com | Gregory R. Grant (P68808)<br>Matthew W. Cross (P77526)<br>CUMMINGS, McCLOREY, DAVIS & ACHO,<br>P.L.C.<br>Attorneys for Def. GRAND TRAVERSE<br>COUNTY<br>310 West Front Street, Suite 221<br>Traverse City, MI 49684<br>(231) 922-1888/(231) 922-9888 Fax<br>ggrant@cmda-law.com<br>mcross@cmda-law.com |

## **DEFENDANT GRAND TRAVERSE COUNTY'S**
## **MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant, Grand Traverse County, by and through its attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., and in support of its Motion for Summary Judgment states the following:

1.    This case centers entirely on Plaintiffs' dissatisfaction with the Grand Traverse County Board of Commissioners' decision to convey Twin Lakes Park to Long Lake Township.

2.    Plaintiffs attempt to thwart the will of Grand Traverse County's elected commissioners by dressing up their dissatisfaction as claims that Grand Traverse County violated restrictive covenants contained in the deeds conveying the parcels that make up Twin Lakes Park and that Grand Traverse County violated their right to procedural due process.

3.    Fed. R. Civ. P. 12(b)(1) provides for summary judgment where a litigant lacks standing under Article III of the United States Constitution, which deprives the court of subject matter jurisdiction over the dispute.

4.    Pursuant to Fed. R. Civ. P. 56(a), a court must grant summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

5.    Summary judgment is warranted pursuant to Fed. R. Civ. P. 12(b)(1) because this Court lacks subject matter jurisdiction given Plaintiffs' lack of standing.

6.    Specifically, Plaintiffs lack standing because they have no evidence to support the existence of any injury in fact to a legally-protected interest, they cannot establish any injury in fact is fairly traceable to and action by Grand Traverse County, and a favorable decision in this case will not redress Plaintiffs' claimed injury.

7.    Even if Plaintiffs could establish standing, Grand Traverse County is entitled to summary judgment because there is no genuine issue of material fact as to whether the county

violated Plaintiffs' procedural due process rights or whether the county violated any restrictive covenant.

**WHEREFORE** Defendant Grand Traverse County respectfully requests that this Honorable Court grant their Motion for Summary Judgment and dismiss Plaintiffs' Verified Complaint in its entirety and with prejudice.

Dated:  October 7, 2024

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.

p

_____
Matthew W. Cross (P77526)
Attorney for Def. GRAND TRAVERSE COUNTY
310 W. Front Street, Ste. 221
Traverse City, MI 49684
(231) 922-1888/(231) 922-9888 Fax
mcross@cmda-law.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES GALLAGHER, TRUSTEE OF THE
JAMES K. & PATSY A. GALLAGHER TRUST
and CHAZZ MCCALL, TRUSTEE OF THE
CHARLES WILLIAM MCCALL TRUST,

        Plaintiffs,

v

GRAND TRAVERSE COUNTY and THE
CHARTER TOWNSHIP OF LONG LAKE,

        Defendants.

HON. JANE M. BECKERING
U.S. DISTRICT COURT JUDGE

Case No. 1:23-cv-01363-JMB-SJB

| | |
|---|---|
| Brace Kern (P75695)<br>BEK LAW, P.L.C.<br>Attorneys for Plaintiffs<br>3434 Veterans Drive<br>Traverse City, MI 49684<br>(231) 499-5380<br>Info@BraceKern.com | Peter B. Worden, Jr. (P41899)<br>GARAN, LUCOW, MILLER, P.C.<br>Attorneys for Def. CHARTER TOWNSHIP OF<br>LONG LAKE<br>3335 W. South Airport Road, Ste. 5A<br>Traverse City, MI 49684<br>(231) 941-1611<br>pworden@garanlucow.com |
| Bradley D. Wierda (P63811)<br>SMITH & JOHNSON ATTORNEYS, P.C.<br>Attorneys for Def. CHARTER<br>TOWNSHIP OF LONG LAKE<br>534 E. Front Street<br>P.O. Box 705<br>Traverse City, MI 49685-0705<br>(231) 946-0700/(231) 946-1735 Fax<br>bwierda@smith-johnson.com | Gregory R. Grant (P68808)<br>Matthew W. Cross (P77526)<br>CUMMINGS, McCLOREY, DAVIS & ACHO,<br>P.L.C.<br>Attorneys for Def. GRAND TRAVERSE<br>COUNTY<br>310 West Front Street, Suite 221<br>Traverse City, MI 49684<br>(231) 922-1888/(231) 922-9888 Fax<br>ggrant@cmda-law.com<br>mcross@cmda-law.com |

## BRIEF IN SUPPORT OF DEFENDANT GRAND TRAVERSE COUNTY'S MOTION FOR SUMMARY JUDGMENT

## Table of Contents

Index of Exhibits................................................................................................iv

Index of Authorities............................................................................................v

Issues Presented.................................................................................................ix

Most Controlling Authority..................................................................................x

Statement of Facts...............................................................................................1

Standard of Review.............................................................................................9

Argument...........................................................................................................10

**I.      Summary judgment is warranted pursuant to Fed. R. Civ. P. 12(b)(1) because this Court lacks subject matter jurisdiction given Plaintiffs' lack of** standing.............10

    *a.   General principles*.......................................................................10

    *b.   Plaintiffs lack standing because they have no evidence to support the existence of any injury in fact to a legally-protected interest*................................11

    *c.   Plaintiffs lack standing because even if they are able to muster some modicum of evidence to support the existence of an injury in fact, there is no evidence to trace that injury to the challenged action of Grand Traverse County*...........................13

    *d.   Plaintiffs lack standing because their alleged injury will not be redressed by a favorable decision*......................................................14

**II.     Even if Plaintiffs have standing, there is no genuine issue of material fact and summary judgment is warranted pursuant to Fed. R. Civ. P. 56(a)**......................17

    *a.   Plaintiffs have not alleged a cognizable due process right sufficient to sustain their Count II claim for violation of procedural due process*.........................17

        *i.    Plaintiffs do not possess a constitutionally protected property interest in Grand Traverse County's continued ownership of Twin Lakes Park merely by virtue of being neighboring property owners*.........................18

        *ii.   The prior iteration of Grand Traverse County's County Owned Real Property Acquisition and Disposal Policy did not create a property or liberty interest in Plaintiffs*......................................21

      *iii.   Plaintiffs' only remaining interest is the same as the general public which cannot support a claim for procedural due process violations*..................22

      *iv.   Plaintiffs had adequate notice and opportunity to be heard regarding the transfer of Twin Lakes Park to Long Lake Township*...............................24

  *b.   There is no genuine issue of material fact as to whether Grand Traverse County's conveyance of Twin Lakes Park violated any restrictive covenant and summary judgment in favor of Grand Traverse County is warranted*...................................26

Conclusion.......................................................................................................................29

**Index of Exhibits**

Exhibit A        5/28/04 Letter from Gilbert Cartwright to Long Lake Township

Exhibit B        1/5/22 Meeting Agenda

Exhibit C        3/8/22 Letter from Lautner Heir

Exhibit D        September 2021 Email Exchange Between Township and Stulen Heir

Exhibit E        1/13/22 Letter from McCall to Grand Traverse County

Exhibit F        3/16/22 Meeting Minutes

Exhibit G        5/14/22 Email from Nancy Will to Grand Traverse County and Long Lake
                 Township

Exhibit H        4/18/23 Email Exchange Between Ingraham (Gallagher) and Grand Traverse
                 County

Exhibit I        Deposition of James Gallagher

Exhibit J        9/6/23 Meeting Agenda

Exhibit K        Long Lake Township Ordinance No. 197

Exhibit L        Deposition of Chazz McCall

Exhibit M        3/3/22 Record Eagle Article

## Index of Authorities

_United States Constitution_

U.S. Const. Art. III.................................................................................8, 9, 13

U.S. Const. Amend. V..................................................................................16

U.S. Const. Amend. XIV...............................................................................16

_Federal Statutes_

28 U.S.C. 2409a.........................................................................................11

42 U.S.C. 1983.......................................................................................5, 22

_Federal Cases_

_Anderson v. Liberty Lobby, Inc._, 477 U.S. 242 (1986).................................8-9

_Arlington Heights v. Metropolitan Housing Development Corporation_, 429 U.S. 252 (1977).......12

_Aschinger v. Columbus Showcase Co.,_ 934 F.2d 1402 (6th Cir. 1991) ..........................25

_Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin._, 13 F.4th 531 (6th Cir. 2021) .......................................................................................14

_Bd. of Regents of State Colleges v. Roth_, 408 U.S. 564 (1972) ......................................17

_Brickner v. Voinovich_, 977 F.2d 235 (6th Cir.1992)..............................................16

_Brooks v. Butler Cnty., Ohio_, No. 21-4129, 2022 WL 2526601 (6th Cir. July 7, 2022)..........18-19

_Celotex Corp. v. Catrett_, 477 U.S. 317 (1986)..................................................8

_Cleveland Bd. of Educ. v. Loudermill_, 470 U.S. 532 (1985).........................................20

_DaimlerChrysler Corp. v. Cuno_, 547 U.S. 332 (2006)..................................................10

_Davis v. Echo Valley Condo. Ass'n_, 945 F.3d 483 (6th Cir. 2019)..................................18

_Davis v. Garrett_, 500 F. Supp. 3d 644 (E.D. Mich. 2020) .........................................17, 21

_Dubuc v. Twp. of Green Oak_, 406 Fed. Appx. 983 (6th Cir. 2011)..........................................23-24

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59 (1978)....................14

*E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057 (6th Cir. 2015)....................................8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000....................10

*Hibben v. Smith*, 191 U.S. 310 (1903)..............................................16

*Int'l Outdoor, Inc. v. City of Troy, Michigan*, 974 F.3d 690 (6th Cir. 2020)....................................8

*Laird v. Tatum*, 408 U.S. 1 (1972)................................................10

*Lindsey v. Whitmer*, No. 1:23-CV-1025, 2024 WL 1711052 (W.D. Mich. Apr. 10, 2024)..............8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)................................8, 9

*McHenry v. Ford Motor Co.*, 146 F. Supp. 896 (E.D. Mich. 1956)..............................26

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)....................................16-17

*Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991).................23

*O'Shea v. Littleton*, 414 U.S. 488 (1974)...........................................10

*Rieg v. Vill. of Seville*, No. 1:22-CV-2120, 2024 WL 1282927 (N.D. Ohio Mar. 26, 2024)...........19

*Ripley v. Wyo. Med. Ctr., Inc.*, 559 F.3d 1119 (10th Cir. 2009)....................................20

*Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208 (1974)..................................10

*Scott v. Harris*, 550 U.S. 372 (2007).............................................9

*Shreve v. Franklin County, Ohio*, 743 F.2d 126 (6th Cir. 2014).............................9

*Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976)............................12

*Taylor v. First of America Bank-Wayne*, 973 F.2d 1284 (6th Cir. 1992)........................25

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).......................................9

*Tudor v. Members of Arkansas State Parks, Recreation & Travel Comm'n*, 83 F.R.D. 165 (E.D. Ark. 1979)................................................10-13

*United States v. Richardson*, 418 U.S. 166 (1974).......................................10

*Warren v. City of Athens, Ohio*, 411 F.3d 697 (6th Cir. 2005).............................17, 22

*Warth v. Seldin*, 422 U.S. 490 (1975)......................................................................10

*Wedgewood Ltd. P'ship I v. Twp. Of Liberty, Ohio*, 610 F.3d 340 (6th Cir. 2010)..........................17

*Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595 (6th Cir. 2006)...................................17

<u>Michigan Constitution</u>

Mich. Const. 1963, art 7.................................................................................15

<u>Michigan Statutes</u>

M.C.L. 46.11...........................................................................................19

M.C.L. 554.381........................................................................................26

<u>Michigan Cases</u>

*Benton Harbor Fed'n of Women's Clubs v. Nelson*, 301 Mich. 465 (1942)...................................26

*City of Huntington Woods v. City of Detroit*, 279 Mich. App. 603 (2008)...............................14-15

*Conlin v. Upton*, 313 Mich. App. 243 (2015)..........................................................25-26

*Indian Vill. Ass'n v. Barton*, 312 Mich. 541 (1945)....................................................18

*Kelly v. Carpenter*, 245 Mich. 406 (1929)............................................................25-26

*Lemon v. Nicolai*, 33 Mich. App. 646 (1971)..........................................................26

*Margolis v. Wilson Oil Corp*, 342 Mich. 600 (1955)...................................................26

*Mich. Bell Tel. Co. v. Dep't of Treasury*, 445 Mich. 470 (1994)........................................22

*Old Mission Peninsula School Dist. v. French*, 362 Mich. 546 (1961).....................................26

*Risko v. Grand Haven Charter Tp. Zoning Bd. of Appeals*, 284 Mich. App. 453 (2009).........21-22

*Stuart v. Chawney*, 454 Mich. 200 (1997).............................................................25

*Thomas v. Steuernol*, 185 Mich. App. 148 (1990)......................................................27

<u>Court Rules</u>

Fed. R. Civ. P. 12...................................................................................8, 9

Fed. R. Civ. P. 56.........................................................................................................8

*Other Sources*

13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531.15 (2001 Supp.)......................................................................................................8

Restatement (First) of Property § 418 (1944).........................................................................26-27

## Issues Presented

I.     Pursuant to Article III of the United States Constitution, in order for this Court to have subject matter jurisdiction over a dispute, the plaintiffs must have standing. To establish standing, a plaintiff must prove (i) an injury in fact—an invasion of a legally-protected interest—that is not merely conjectural or hypothetical; (ii) that there is a fairly traceable connection between the injury in fact and the conduct complained of; and (iii) that the injury in fact will be redressed by a favorable decision. Do Plaintiffs have standing to pursue their claims where they cannot establish an injury in fact fairly traceable to any action by Grand Traverse County that is redressable by a favorable decision?

Plaintiffs answer "yes."

Defendant answers "no."

II.    In order to sustain a procedural due process claim, a plaintiff must establish deprivation of a legally-protected property interest without notice and an opportunity to be heard. Owning property near publicly owned land does not confer such an interest, nor does reliance on a municipal policy. Can Plaintiffs sustain their procedural due process claim where it is based on their status as property owners neighboring Twin Lakes Park and on a prior iteration of Grand Traverse County's real property disposal policy and where Plaintiffs were afforded notice and an opportunity to be heard?

Plaintiffs answer "yes."

Defendant answers "no."

III.   Under Michigan law, courts may look to extrinsic evidence when attempting to discern the grantor's intent in an ambiguous deed containing restrictive covenants, but ambiguous restrictive covenants are strictly construed against the grantor and all doubts resolved in favor of the free use of property. Here, the grantor's intent is ambiguous and what little evidence exists of his intent indicates he simply wanted the land to be used for any purpose consistent with a county park. Did Grand Traverse County violate the restrictive covenants when it conveyed Twin Lakes Park to Long Lake Township where the township agreed to continue operating the park and ensuring it is open to all residents of Grant Traverse County?

Plaintiffs answer "yes."

Defendant answers "no."

## Most Controlling Authority

<u>Federal</u>

U.S. Const. Art. III, § 2, cl. 1

 U.S. Const. Amend. V, XIV

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972)

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)

*Dubuc v. Twp. of Green Oak*, 406 Fed. Appx. 983 (6th Cir. 2011)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

*Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976)

*Tudor v. Members of Arkansas State Parks, Recreation & Travel Comm'n*, 83 F.R.D. 165 (E.D. Ark. 1979)

Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 56(a)

<u>State</u>

*Conlin v. Upton*, 313 Mich. App. 243 (2015)

*Lemon v. Nicolai*, 33 Mich. App. 646 (1971)

*Old Mission Peninsula School Dist. v. French*, 362 Mich. 546 (1961)

*Stuart v. Chawney*, 454 Mich. 200 (1997)

## Introduction

This case centers entirely on Plaintiffs' dissatisfaction with the Grand Traverse County Board of Commissioners' decision to convey Twin Lakes Park to Long Lake Township. Plaintiffs attempt to thwart the will of Grand Traverse County's elected commissioners by dressing up their dissatisfaction as claims that Grand Traverse County violated restrictive covenants contained in the deeds conveying the parcels that make up Twin Lakes Park and that Grand Traverse County violated their right to procedural due process. As discussed below, Plaintiffs lack standing to bring these claims, but even if they get over the hurdle of standing, there is no genuine issue of material fact. Grand Traverse County did not violate any restrictive covenant, nor did it violate Plaintiffs' right to procedural due process and summary judgment is warranted.

## Statement of Facts

Twin Lakes Park is located in Long Lake Township in Grand Traverse County, Michigan. The park is made up of several parcels conveyed to Grand Traverse County beginning in 1941. Those conveyances, and the relevant language in the deeds conveying the parcels, are detailed below:

- **October 29, 1941-Conveyance from Judge Parm C. Gilbert to Grand Traverse County ("Gilbert Transfer 1"):** The warranty deed contained the following language: "These lands so conveyed to Grand Traverse County as a county park, to be owned, improved and used as such and for recreation purposes." ECF No. 1-4, PageID. 31;

- **October 14, 1943-Conveyance from Judge Gilbert to Grand Traverse County ("Gilbert Transfer 2"):** The warranty deed contained the following language: "This property is conveyed to Grand Traverse County as a gift and as part of and addition to County Park to be owned, improved, and used as such, and for recreation purposes and programs." ECF No. 1-7, PageID. 40;

- **June 26, 1944-Conveyance from Judge Gilbert to Grand Traverse County ("Gilbert Transfer 3"):** The warranty deed contained the following language: "These premises are conveyed as a gift to Grand Traverse County to be owned, used and improved as a County Park and for recreation purposes. This parcel is in

addition to lands heretofore conveyed by same grantor to said County for similar purposes as shown by conveyances now on record in office of Register of Deeds, Grand Traverse County, Michigan." ECF No. 1-8, PageID. 42;

- **June 22, 1967-Conveyance from Wilbert P. Lautner and Beulah Lautner to Grand Traverse County ("Lautner Transfer"):** The warranty deed contained the following language: "Dedicated to Grand Traverse County 4-H Club Leader's Association. To be used as Nature Study and recreational area." ECF No. 1-9, PageID. 44; and

- **December 29, 1972-Conveyance from Frank L. Stulen and Dorothy R. Stulen to Grand Traverse County ("Stulen Transfer"):** The warranty deed contained the following language: "For recreational and educational use." ECF No. 1-10, PageID. 46.

These transfers are depicted on the below map (see also ECF No. 1-2, PageID. 25), along with the location of the parcels owned by Plaintiffs.



Prior to effectuating the first of Judge Gilbert's three conveyances, he wrote to Grand Traverse County indicating that "[i]t [was his] **thought** to convey [the first parcel] to the county

2

as a county park, **to be used <u>for any purpose consistent therewith</u>**, and particularly…[f]or use of 4-H clubs, their members and guests, including, of course, their parents on occasion", "[f]or members of the Grange or any similar farm organization, when available", and "[t]o be used by and let for use to any other group, particularly of young people, to be used for the same purpose; that is to say, recreation, camping, occupation in connection with camp life…and possibly on occasion Boy Scouts and Girl Scouts; all subject to the approval of trustees **or other parties having lawful charge of the property**." ECF No. 1-3, PageID. 27 (emphasis added).

Judge Gilbert's missive went on to make a number of suggestions regarding the park's ongoing management and maintenance, but he closed by noting that "[i]f any of these suggestions are out of line, or not agreeable, of course, you are at perfect liberty to disregard the same." *Id*. Notably absent from the deeds is any clear indication that Judge Gilbert's gifts were contingent on Grand Traverse County forever owning Twin Lakes Park. He merely expressed a desire that the lands be owned, improved, and used as a "county park." As a jurist, Judge Gilbert no doubt knew how to clearly express a desire that the land be forever owned by Grand Traverse County. Indeed, in another gift made to Long Lake Township in 1925, Judge Gilbert expressly provided that the dedicated land was to "**at all times** be under control of and policed and cared for **by the Township Board of said Township**…" ECF No. 39-2, PageID. 351 (emphasis added).

Prior to the conveyance at issue in this case, Grand Traverse County and Long Lake Township had discussed the prospect of a conveyance of Twin Lakes Park on numerous occasions, including in 2004. During this period, John Gilbert Cartwright, speaking on behalf of Judge Gilbert's heirs, wrote to then Long Lake Township Supervisor Karen Rosa indicating he "ha[d] been in contact with all the Gilbert heirs and [he] ha[d] their support to say that the Gilbert heirs strongly favor the transfer of the Twin Lakes property to Long Lake Township for recreational and

3

cultural land uses." **Exhibit A**, 5/28/04 Letter from Gilbert Cartwright to Long Lake Township. However, the county ultimately abandoned the effort to convey Twin Lakes Park in 2004.

Conversations between Grand Traverse County and Long Lake Township resumed in early 2022. See **Exhibit B**, 1/5/22 Meeting Agenda. That agenda included correspondence from Long Lake Township Supervisor Ron Lemcool. *Id*. at 005. In that letter, Mr. Lemcool noted that the township had discussed the potential transfer of Twin Lakes Park with the heirs of the original grantors, and they supported the transfer. *Id*.; **Exhibit A**; **Exhibit C**, 3/8/22 Letter from Lautner Heir (providing that the Lautners "believe the property we donated to 4-H camp will be best taken care of by Long Lake Township…"); and **Exhibit D**, September 2021 Email Exchange Between Township and Stulen Heir (noting that the transfer "appear[ed] to be in alignment with their wishes"). Mr. Lemcool's letter also included a detailed proposal for how Long Lake Township intended to utilize Twin Lakes Park as a park open to residents of Long Lake Township and surrounding communities—i.e. all county residents. **Exhibit B**, pgs. 006-011.

On January 13, 2022, well aware of the ongoing discussion between Grand Traverse County and Long Lake Township regarding the transfer of Twin Lakes Park, Plaintiff Chazz McCall submitted a letter to Grand Traverse County opposing the transfer. **Exhibit E**, 1/13/22 Letter from McCall to Grand Traverse County. Despite his opposition, Mr. McCall's letter acknowledged that, based on Long Lake Township's proposal for its potential future ownership of the park, the use would not change in any meaningful way. *Id*. (noting that "[m]ost, if not all, of the identified activities already take place at the park…").

Prior to March 16, 2022, Grand Traverse County had in place a Real Property Acquisition and Disposal Policy that required, *inter alia*, the county to "consult with an affected and/or adjacent local unit of government and property owner from which the parcel is located and notify them of

{02144928-1 }

the intended disposal of real property." ECF No. 1-14, PageID. 65. However, on March 16, 2022, at a properly noticed meeting compliant with the Michigan Open Meetings Act that allowed for public comment, the Board of Commissioners amended this policy to provide that it "does not apply to…county owned property that is being transferred to another municipality and that property will maintain the intended use." ECF No. 1-15, PageID. 71-73. The Request for Board Action from the County Administrator and the proposed amended policy were both attached to the publicly available meeting agenda. Following discussion, the Board of Commissioners voted to update the policy to exempt transfers to another municipality where the use does not change. **Exhibit F**, 3/16/22 Meeting Minutes. At that same meeting, the Board of Commissions approved the transfer of Twin Lakes Park to Long Lake Township. *Id*.

Despite being approved on March 16, 2022, the transfer of Twin Lakes Park from Grand Traverse County to Long Lake Township was not immediately effectuated as both entities performed their due diligence and negotiated a purchase agreement. While Grand Traverse County and Long Lake Township negotiated the transfer, residents, including Plaintiff Gallagher's daughter, Kay Ingraham,[1] were not shy about voicing their skepticism or outright displeasure with the transfer. See e.g. **Exhibit G**, 5/14/22 Email from Nancy Will to Grand Traverse County and Long Lake Township; and **Exhibit H**, 4/18/23 Email Exchange Between Ingraham (Gallagher) and Grand Traverse County.

On September 6, 2023, the Grand Traverse County Board of Commissioners repealed its ordinance regulating Twin Lakes Park (ECF No. 1-13, PageID. 59) to be effective upon the transfer of Twin Lakes Park to Long Lake Township. **Exhibit J**, 9/6/23 Meeting Agenda.

---

[1] As Plaintiff Gallagher noted in his deposition, his daughter Kay Ingraham is "handling everything" related to this lawsuit. **Exhibit I**, Deposition of James Gallagher, pg. 12.

{02144928-1 }

On September 8, 2023, Grand Traverse County executed a Quit Claim Deed conveying Twin Lakes Park to Long Lake Township. ECF No. 1-11, PageID. 48. That document specifically provided that the conveyance was subject to "Building and Use Restrictions" as set forth in the aforementioned five (5) deeds from Judge Gilbert, the Stulens, and the Lautners. ECF No. 1-11, PageID. 49. The deed further provided that Long Lake Township "by acceptance of this deed, hereby covenants to keep [Twin Lakes Park] open as a public park and available to residents of Grand Traverse County in perpetuity" and that "[v]iolation of any of the deed restrictions shall trigger a right of reentry." *Id*. With the transfer effectuated and Grand Traverse County having repealed its ordinance regulating Twin Lakes Park, Long Lake Township enacted its own ordinance regulating the park. **Exhibit K**, Long Lake Township Ordinance No. 197.

On December 28, 2023, Plaintiffs filed their Verified Complaint in this Court asserting a total of five (5) counts as bases for this Court to claw back the transfer of Twin Lakes Park from Grand Traverse County to Long Lake Township—an action approved by a majority of the elected members of the governing boards for those bodies. ECF No. 1. After prompting by counsel for Defendants, Plaintiffs voluntarily dismissed counts three and four, which were untenable as a matter of law. See ECF No. 28. The only claims remaining are Count I seeking to quiet title to Twin Lakes Park and enforce the restrictive covenants contained in the deeds conveying the parcels that make up Twin Lakes Park and Count II pursuant to 42 U.S.C. 1983 claiming violation of procedural due process. ECF No. 1, PageID. 6-13.

On August 1, 2024, both Plaintiffs were deposed. Mr. Gallagher acknowledged that he understood the term "county park" to mean that anybody in the county could use the park and he has no reason to believe that Twin Lakes Park is not still open to anyone in Grand Traverse County following the transfer to Long Lake Township. **Exhibit I**, pgs. 17, 26. Despite his Verified

{02144928-1 }

Complaint alleging that the transfer attempts to utilize Twin Lakes Park for a purpose other than as a county park, he testified he "ha[d] no idea" what other purpose. *Id*. at 26-27. As to his allegation that he was deprived of the county's protection, regulation and control of Twin Lakes when it repealed ordinance 8A, he testified he was "not sure" how he was deprived of anything, and that the county had the ability to repeal its ordinance. *Id*. at 32.

As to his claimed damages, Mr. Gallagher acknowledged his taxes have not increased tenfold as the Complaint alleges and he has no evidence to support the claim that his taxes will go up tenfold. *Id*. at 39. In fact, he testified if his taxes have gone up at all, the increase was minimal and he does not know whether the increase is related to this transfer. *Id*. at 39-40. Mr. Gallagher testified he was unaware of any special and/or unique damages he has suffered as a result of the transfer and that he has "no idea" what his damages are. *Id*. at 42, 44-45. Mr. Gallagher testified that he was unaware of any diminution of the value of his property as a result of this transfer and he was unsure why this allegation was even included in the Complaint. *Id*. at 51-52.

Finally, Mr. Gallagher clarified that the only basis for his procedural due process claim is Grand Traverse County's property disposal policy. *Id*. at 57. He acknowledged that prior to September 8, 2023 he knew Grand Traverse County was discussing transferring Twin Lakes Park to Long Lake Township and he could have expressed any opinion he had on the topic to either Grand Traverse County or Long Lake Township. Mr. Gallagher personally did nothing to express his objection to the transfer, but his daughter had the opportunity to attend Grand Traverse County meetings and express opposition to the transfer. *Id*. at 47-48, 58.

Mr. McCall testified to concerns over rule enforcement at Twin Lakes Park under both Grand Traverse County's ownership and Long Lake Township's ownership. **Exhibit L**, Deposition of Chazz McCall, pgs. 14-15, 83-84. However, he acknowledged that Twin Lakes Park

7

continues to be used for the same purposes and that it remains open to all Grand Traverse County residents. *Id*. at 36, 38-39. The only change, McCall testified, is the fact that Twin Lakes Park is now owned by Long Lake Township instead of Grand Traverse County. *Id*. at 40. As with Mr. Gallagher, Mr. McCall acknowledged Grand Traverse County had the ability to repeal ordinance 8A that regulated Twin Lakes Park and he is unaware of any impropriety by the county in the process it followed to accomplish that repeal. *Id*. at 44. Mr. McCall also acknowledged his taxes have not gone up after the transfer of Twin Lakes Park and he has no evidence to support his claim that his property has, or will, diminish in value because of this transfer. *Id*. at 53, 57-59, 76.

As to his due process claim, Mr. McCall testified his claim is based on purportedly not being notified prior to the transfer of Twin Lakes Park and not having the opportunity to voice his opposition to the transfer. However, he acknowledged he and Mr. Gallagher's daughter were aware of discussions of a possible transfer as early as 2021 and he was able to voice his opposition in the local paper over one year before the transfer. *Id*. at 68-69, 87-88; **Exhibit M**, 3/3/22 Record Eagle Article. He acknowledged watching the January 5, 2022 Grand Traverse County Board of Commissioners' meeting and admitted he could have accessed that meeting's agenda. **Exhibit L**, pgs. 78-80. He also acknowledged having the opportunity to submit his opposition to the transfer of Twin Lakes Park in writing to Grand Traverse County. **Exhibit E**; **Exhibit L**, pg. 82-83. He claims he was not notified prior to Grand Traverse County amending its property disposal policy because the County's meeting agenda failed to indicate they intended to amend the property disposal policy, thus depriving him of the opportunity to voice his opposition to the change. *Id*. at 65-66, 99. As is clear from ECF No. 1-15, PageID. 71-73, this is demonstrably false. He acknowledged his claimed entitlement to notice and an opportunity to be heard is based entirely on the prior iteration of the real property disposal policy. **Exhibit L**, pg. 102. Finally, he conceded

that that he could have gone to any meeting of the Grand Traverse County Board of Commissioners and had three minutes to address that body during public comment. *Id*. at 74.

### Standard of Review

Fed. R. Civ. P. 12(b)(1) provides for summary judgment where a litigant lacks standing under Article III of the United States Constitution, which deprives the court of subject matter jurisdiction over the dispute. U.S. Const. Art. III, § 2, cl. 1 (hereafter simply "Article III"). See e.g. *Int'l Outdoor, Inc. v. City of Troy, Michigan*, 974 F.3d 690, 700 (6th Cir. 2020); *Lindsey v. Whitmer*, No. 1:23-CV-1025, 2024 WL 1711052, at *7 (W.D. Mich. Apr. 10, 2024). The elements of Article III standing, discussed in greater detail below, are not simply pleading requirements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id*.; 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531.15 n. 15 (2001 Supp.). At the summary judgment stage, a party seeking judgment can put the opposing party to its proof merely by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Pursuant to Fed. R. Civ. P. 56(a), a court must grant summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment may be granted "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1065 (6th Cir. 2015). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. Although the court must draw all reasonable inferences in favor of the nonmoving party, "[a] dispute is genuine only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Shreve v. Franklin County, Ohio*, 743 F.2d 126, 132 (6th Cir. 2014). "When opposing parties tell two different stores, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**Argument**

I. **Summary judgment is warranted pursuant to Fed. R. Civ. P. 12(b)(1) because this Court lacks subject matter jurisdiction given Plaintiffs' lack of standing.**

  a. *General principles*

Article III of the United States Constitution limits the "judicial power" of the federal courts to "Cases" and "Controversies." One imperative in meeting this requirement is that the plaintiffs have a "personal stake" in the outcome of a case. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). United States Supreme Court caselaw has established the following three elements as "the irreducible constitutional minimum of standing...":

> First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant…' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' *Lujan*, 504 U.S. at 560-61 (citations omitted).

10

The party invoking federal jurisdiction bears the burden of establishing the requirements for standing as to each claim he seeks to press. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Additionally, standing must be shown with respect to each form of relief sought, whether it be injunctive relief, damages, or civil penalties. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

> b. *Plaintiffs lack standing because they have no evidence to support the existence of any injury in fact to a legally-protected interest.*

As a condition precedent to standing to litigate, the plaintiffs must allege that they have sustained some direct, individualized injury. *Warth v. Seldin*, 422 U.S. 490 (1975). Abstract or hypothetical injuries and questions which are of a general interest common to all members of the public are not sufficient to confer standing to litigate. *O'Shea v. Littleton*, 414 U.S. 488 (1974); *Laird v. Tatum*, 408 U.S. 1 (1972); *United States v. Richardson*, 418 U.S. 166 (1974); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208 (1974). As an initial matter, it is the rare case where, as here, two disgruntled citizens seek to negate a municipality's decision to convey property to another municipality to be used for the same purpose, but in *Tudor v. Members of Arkansas State Parks, Recreation & Travel Comm'n*, 83 F.R.D. 165 (E.D. Ark. 1979), the court dealt with a similar scenario.

In *Tudor*, the Arkansas State Parks, Recreation and Travel Commission held title to approximately 2,300 acres of land known as Buffalo State Park and the Lost Valley State Park. The Commission conveyed these lands to the United States. The plaintiffs in *Tudor* lived or owned property near these lands and they challenged the conveyance based on, *inter alia*, the Commission's failure to provide notice and an opportunity to be heard prior to the conveyance. *Id.*

11

at 167. The plaintiffs sought to set aside the conveyance of the parkland and to quiet title in favor of the Commission. *Id*.

Defendants challenged plaintiffs' standing and although the court's analysis centered on plaintiffs' claimed entitlement to standing under a federal statute,[2] the same general standing principles set out above were also part of the court's analysis. That is, under both the statute and general standing principles, the plaintiffs needed to establish an injury in fact. Plaintiffs claimed as their injury in fact, *inter alia*, diminution of property value and a change in character of the community as a result of the transfer. The court held that "none of the injuries alleged by the plaintiffs satisf[ied] the 'injury in fact' standard…" *Id*. at 169. The court went on to point out that "the plaintiffs ha[d] no color of title, right or interest in the land conveyed by the Commission other than that generally enjoyed by citizens of the State of Arkansas" and that title prior to the transfer was instead vested in the Commission. *Id*. The court further noted there was "no evidence…which suggest[ed] that the land itself has been diminished in value or that public access to the land has been curtailed." *Id*. at 169-70. The court pointed out that the land was "still located within the boundaries of the State of Arkansas and [was] still available for the public's enjoyment." *Id*. at 170.

As in *Tudor*, Plaintiffs here cannot prove the existence of any injury in fact. Their only articulated "injuries" are the alleged diminution of their property value and an increase in their taxes, but as is clear from their deposition testimony they have no proof to support such a claim. **Exhibit I**, pgs. 39-40, 42, 44-45, 51-52; **Exhibit L**, pgs. 53, 57-59, 76.[3] These alleged damages do

---

2 See 28 U.S.C. 2409a.

3 As to the alleged diminution of property value, it is hard to imagine how Plaintiffs' property values could diminish based solely on the fact that the public park neighboring their property is now owned by Long Lake Township, and not Grand Traverse County.

not constitute injuries in fact and are instead nothing more than conjectural or hypothetical injuries that do not confer standing. *Lujan*, 504 U.S. at 560-61; *Tudor*, 83 F.R.D. at 169-70. Further, as discussed in greater detail below, Plaintiffs have no legally-protected interest based merely on their status as neighboring property owners. See *infra*, Section II(a)(i).

Because Plaintiffs cannot establish the existence of any injury in fact to a legally-protected interest, they lack standing and summary judgment is warranted.

c. *Plaintiffs lack standing because even if they are able to muster some modicum of evidence to support the existence of an injury in fact, there is no evidence to trace that injury to the challenged action of Grand Traverse County.*

Any injury in fact meant to confer standing must have a "fairly traceable" causal connection to the challenged conduct. *Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 261 (1977). The connection between the alleged injury and the challenged conduct must be apparent without resort to speculative inferences. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976). This requirement was also a focal point of the court's decision in *Tudor*, with the court holding that it "fail[ed] to detect a causal connection between the injuries claimed and the conduct challenged" given that "[t]he plaintiffs ha[d] not specified, and [the court was] unable to discern without resort to speculation and conjecture, how the transfer of title to land from one governmental entity to another would produce the results alleged by the plaintiffs." *Tudor*, 83 F.R.D. at 170. The court noted that "[c]hanges in businesses, real estate values and communities may be caused by a variety of factors, including the mere passage of time" and "it [was] extremely tenuous to assign responsibility for the alleged injuries to the change in title of the land in question when, as an undisputed matter of fact, the plaintiffs did not have any title or color of title to the land which was transferred. Indeed, the only connection between the plaintiffs and the State owned property transferred to the United States [was] that the plaintiffs'

13

property is located near the property which was conveyed" and the alleged "injuries [were] obviously too remote and speculative in nature to constitute the detriment contemplated for standing to litigate." *Id*.

As in *Tudor*, even if Plaintiffs are able to muster some modicum of evidence to support the notion that their property values have diminished or that their taxes have increased, they quite simply cannot trace that injury to the transfer of Twin Lakes Park from Grand Traverse County to Long Lake Township without resort to speculation and conjecture. As in *Tudor*, we simply cannot "discern without resort to speculation and conjecture, how the transfer of title to land from one governmental entity to another would produce the results alleged by the plaintiffs." *Tudor*, 83 F.R.D. at 170. While it is dubious to take the position that their property values have diminished at all since this transfer given the ever-increasing value of real estate, property value changes "may be caused by a variety of factors, including the mere passage of time." *Id*. The extremely tenuous nature of Plaintiffs' alleged injury is accentuated by the fact that Plaintiffs had no possessory interest in Twin Lakes Park and their only connection is their proximity to the park. *Id*. As the court held in *Tudor*, these "injuries are obviously too remote and speculative in nature to constitute the detriment contemplated for standing to litigate." *Id*.

Because Plaintiffs cannot establish an injury in fact to a legally-protected interest with a fairly traceable causal connection to the transfer of Twin Lakes Park from Grand Traverse County to Long Lake Township without resort to speculation, they lack standing and summary judgment is warranted.

    d. *Plaintiffs lack standing because their alleged injury will not be redressed by a favorable decision.*

Lastly, and perhaps most importantly, Article III standing requires that there must be a substantial likelihood that the judicial relief requested by the plaintiffs will prevent or redress the

claimed injury. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59 (1978); *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 539–40 (6th Cir. 2021) (quoting *Lujan*, 504 U.S. at 560-61 (1992). "The plaintiff must show that each requested remedy will redress some portion of the plaintiff's injury. . .  Conversely, the plaintiff cannot seek a remedy that has no ameliorative effects on that injury." *Id.* at 540. In Plaintiffs' Complaint, they ask this Court to render void the transfer of Twin Lakes Park from Grand Traverse County to Long Lake Township and require Grand Traverse County to forever own, use, and improve Twin Lakes Park. ECF No. 1, PageID. 16. Quite simply, the relief requested by Plaintiffs will not redress their alleged injuries. Plaintiffs' have not articulated how requiring Grand Traverse County to maintain ownership of Twin Lakes Park would address the alleged diminution of their property value and increase in their taxes.

Moreover, the relief requested by Plaintiffs is nonsensical. No court has ever imposed such a total restraint on alienation of property or passed a permanent injunction requiring a municipality to maintain property in perpetuity. The closet analogous case is *City of Huntington Woods v. City of Detroit*, 279 Mich. App. 603 (2008), which revolves around a dispute over Detroit's authority to sell or convey its interest in the Rackham Golf Course, a 121-acre property located in Huntington Woods. In 1924, the Rackhams deeded the property, containing the golf course and the clubhouse, to the City of Detroit and included in the deed several conditions including that "the said premises shall be perpetually maintained by the said party of the second part exclusively as a public golf course for the use of the public under reasonable rules, regulations and charges to be established by second party." *Id.* at 607. The plaintiffs, including the City of Huntington Woods and several individuals, sought a declaratory judgment to prevent the sale of the property to a private entity, arguing that the property was subject to a restrictive covenant requiring it to be used

{02144928-1 }

only as a public park or golf course. The court reasoned that "[g]iven the unambiguous language used and the clearly stated intent of the grantors, we conclude that the Rackham deed contains an express covenant precluding the use of the subject property for any purpose other than a public golf course." *Id*. at 623. However, this restriction on use did not mean that Detroit was required to maintain the property in perpetuity. Rather, Detroit possessed a constitutional and statutory right to both acquire property and lease, sell or dispose of the same. The court noted that "[t]his right to sell is consistent with our determination that a fee interest was conveyed to defendant; however, we must reconcile ***defendant's statutory right to sell property*** with any restrictions of conveyance contained in the Rackham deed." *Id*. at 624. Ultimately, the court determined "that defendant may only sell the subject property to another public entity and not to a private entity." *Id*. at 626.

Here, like the deed in *City of Huntington Woods,* there can be no legitimate disagreement that the dedications of the lands that make up Twin Lakes Park were for public use as a park. However, it is always the prerogative of the municipality receiving such a dedication to abandon the public use if it makes the policy determination to do so.[4] Indeed, the Michigan Constitution explicitly states "the right of all counties, townships, cities and villages to the reasonable control of their highways, streets, alleys and public places is hereby reserved to such local units of government." Mich. Const. 1963, art 7, § 29. However, even if this Court accepts Plaintiffs' argument that the mere change in ownership violates the deed restrictions (which it does not), the result would be reversion to the heirs of the original grantors. Indeed, Plaintiffs acknowledge as much in their Complaint. ECF No. 1, PageID. 10. However, the heirs of the original grantors have already been consulted and they support the transfer. *See* **Exhibit B**, at 005; *see also* **Exhibit A**;

---

4 To be clear, Grand Traverse County does not contend that it has abandoned the public use. As discussed in *Section III A*, that public use continues under the stewardship of Long Lake Township.

**Exhibit C**, **Exhibit D**, and **Exhibit B** at pgs. 006-011. If this Court were to declare that the property should revert back to the heirs of the original grantors, it is entirely possible that such a decision would be ultimately futile as the heirs could simply re-gift the property to Long Lake Township anyway.

What the Plaintiffs ultimately want—for Grand Traverse County to maintain the property in perpetuity—is simply not feasible. The Grand Traverse County Board of Commissioners has made clear on multiple occasions that it does not desire to own and manage Twin Lakes Park. The end result of this case will not be Grand Traverse County holding onto this property and operating it as a park in perpetuity. Grand Traverse County will divest itself of Twin Lakes Park, even if that means reversion to the heirs of the original grantors. This eventuality would not only not redress Plaintiffs' current complaints, it could lead to their claimed worst case scenario of losing a public park as their neighbor.

Thus, because Plaintiffs' claimed injury would not be, and cannot be, redressed by a favorable decision, Plaintiffs are unable to establish Article III standing. Therefore, this Court does not have subject matter jurisdiction over their claims, and they should be dismissed.

II.    **Even if Plaintiffs have standing, there is no genuine issue of material fact and summary judgment is warranted pursuant to Fed. R. Civ. P. 56(a).**

    a.   *Plaintiffs have not alleged a cognizable due process right sufficient to sustain their Count II claim for violation of procedural due process.*

Both the federal and state constitutions provide that no person shall be deprived of life, liberty, or property without due process. U.S. Const. Amend. V; Const. 1963, art 1, § 17.[5] "The essence of due process is that a deprivation of a property or liberty interest must be 'preceded by notice and opportunity for hearing appropriate to the nature of the case." *Brickner v. Voinovich*,

---

5 The Fourteenth Amendment makes the Fifth Amendment applicable to the States. See *Hibben v. Smith*, 191 U.S. 310, 325 (1903); U.S. Const. Amend. XIV.

977 F.2d 235, 237 (6th Cir.1992) (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)). "To bring a procedural due process claim, [a] Plaintiff must show '(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.'" *Davis v. Garrett*, 500 F. Supp. 3d 644, 647 (E.D. Mich. 2020) (quoting *Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). "The Supreme Court has described 'the root requirement' of the Due Process Clause as notice and an opportunity to be heard before one is ***deprived of a significant property interest***." *Wedgewood Ltd. P'ship I v. Twp. Of Liberty, Ohio*, 610 F.3d 340, 354 (6th Cir. 2010) (emphasis added).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "Property rights are created and defined not by the Constitution but by independent sources such as state law." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005). Therefore, when considering the procedural due process claim, the initial inquiry is (A) whether the Plaintiffs possessed a requisite property or liberty interest and (B) whether the Plaintiffs were deprived of that interest. "Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest will the court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated his rights to due process." *Warren*, 411 F.3d at 708.

> i. *Plaintiffs do not possess a constitutionally protected property interest in Grand Traverse County's continued ownership of Twin Lakes Park merely by virtue of being neighboring property owners.*

Plaintiffs claim their constitutionally protected property interest arises out of their status as neighboring property owners. Specifically, they claim that (a) "owners of real property abutting publicly dedicated lands have the legal right to enjoin any unauthorized use of their neighboring publicly dedicated lands," (b) "Owners of real property abutting real property, that contains a restrictive covenant, have the legal right to enforce the terms of the restrictive covenant," (c) "Plaintiffs, as owners of land abutting land dedicated as a County Park, have a special legal right to insist that the dedicated lands shall not be appropriated to any use other than as a County Park," and (d) "owners of real property abutting publicly dedicated lands have a special legal right related to enforcing the intended use." See ECF No. 1, PageID. 11-12.

Although "[r]estrictions upon the use of property by reason of a general plan have been approved by [Michigan courts] as 'a substantial property right which **the owners** can maintain and enforce",[6] restrictive covenants are construed "**strictly against those claiming to enforce them, and all doubts are resolved in favor of the free use of the property**"[7] and proximity to land subject to a restrictive covenant alone does not create a protected property interest.

For example, in *Brooks v. Butler Cnty., Ohio*, neighboring property owners sued Butler County after the County Board of Zoning Appeals granted a property developer's requested zoning variances. *Brooks v. Butler Cnty., Ohio*, No. 21-4129, 2022 WL 2526601, at *7 (6th Cir. July 7, 2022). The plaintiffs raised a similar argument to Plaintiffs in this case concerning their property interest arguing that their status as neighboring property owners justified their due process claims. *Id*. The Sixth Circuit rejected this argument holding that "[a]lthough '[p]roperty owners may have a property interest in the existing zoning classification for **their** property,' . . . neither the Sixth

---

6 *Indian Vill. Ass'n v. Barton*, 312 Mich. 541, 549 (1945).

7 *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 493 (6th Cir. 2019) (emphasis added) (internal citations and quotations omitted).

Circuit nor Ohio courts have gone so far as to say that property owners have a property interest in the existing zoning classifications **of nearby or neighboring properties**. Nor have the courts suggested that property owners have a property interest in a neighboring property's non-variance from applicable zoning requirements." *Id.* (emphasis added). *See also Rieg v. Vill. of Seville*, No. 1:22-CV-2120, 2024 WL 1282927, at *3-4 (N.D. Ohio Mar. 26, 2024).

Here, while Plaintiffs would have a legally protected interest in ensuring compliance with a restrictive covenant involving their property or property subject to restrictive covenant to which they hold a right of reverter, they have no such interest in Twin Lakes Park based solely on their status as neighboring property owners. Further, even if they had a legally-protected right to prevent unauthorized use of Twin Lakes Park, this does not help the Plaintiffs because **the use of Twin Lakes Park has not changed**. Plaintiffs fail to appreciate the difference between restrictive covenants governing land use and restraints on alienation.[8] Twin Lakes Park is still a park. The September 8, 2023 Quit Claim Deed conveying Twin Lakes Park to Long Lake Township specifically provided that the conveyance was subject to "Building and Use Restrictions" as set forth in the five (5) deeds from Judge Gilbert, the Stulens, and the Lautners. ECF No. 1-11, PageID. 49. The deed further provided that Long Lake Township "by acceptance of this deed, hereby covenants to keep [Twin Lakes Park] open as a public park and available to residents of Grand Traverse County in perpetuity" and that "[v]iolation of any of the deed restrictions shall trigger a right of reentry." *Id.* Thus, any property right Plaintiffs may have to enforce restrictive covenants regarding land use is inapplicable because the use of the land has not changed.

---

8 As discussed below, Plaintiffs are advocating for what amounts to a restraint on alienation to prevent Grand Traverse County from ever selling Twin Lakes Park. Such reading would directly contradict M.C.L. 46.11(c) which explicitly grants county boards of commissioners the authority to sell real estate belonging to the county "and prescribe the manner in which a conveyance of the real estate is to be executed."

{02144928-1 }

In sum, it is entirely insufficient for Plaintiffs to merely cite their status as neighboring property owners as the basis for a constitutionally protected property interest. At most, they have expressed a mere "abstract need or desire" or "unilateral expectation" that Twin Lakes Park continue to be owned by Grand Traverse County, but they have no "legitimate claim of entitlement" to the Grand Traverse County's continued ownership. As a result, Plaintiffs' procedural due process claim fails, and summary judgment is warranted.

> ii.  *The prior iteration of Grand Traverse County's County Owned Real Property Acquisition and Disposal Policy did not create a property or liberty interest in Plaintiffs.*

Plaintiffs also suggest that the version of Grand Traverse County's County Owned Real Property Acquisition and Disposal Policy that existed prior to March 16, 2022 created a property interest sufficient to sustain a claim for a violation of due process. As explained above, the former County Owned Real Property Acquisition and Disposal Policy required the county "consult with an affected and/or adjacent local unit of government and property owner from which the parcel is located and notify them of the intended disposal of real property." ECF No. 1-14, PageID. 65. However, on March 16, 2022, at a properly noticed meeting compliant with the Michigan Open Meetings Act that allowed for public comment, the Board of Commissioners amended this policy to provide that it "does not apply to…county owned property that is being transferred to another municipality and that property will maintain the intended use." ECF No. 1-15, PageID. 71-73.

As an initial matter, it is well established that procedural protections in governmental policies—like those in the County's property disposal—are insufficient to create property interests protected by the Fourteenth Amendment. See *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("'Property' cannot be defined by the procedures provided for its deprivation…"); *Ripley v. Wyo. Med. Ctr., Inc.*, 559 F.3d 1119, 1124–25 (10th Cir. 2009) (concluding that a state

statute regarding factors to be considered in admission to medical staffs of public hospitals created "a procedural right without a mandated outcome...[that] [was] not protected under the Due Process Clause"), cert. denied, 558 U.S. 879 (2009). As a result, even if the Grand Traverse County Board of Commissioners had not decided to amend the policy on March 16, 2022, it could not serve as a basis for a procedural due process claim.

Even if we completely ignore the well-settled proposition that a governmental policy does not create a constitutionally protected property interest that can serve as the basis for a procedural due process claim and accept Plaintiffs' argument that the former version of the policy created a protected property interest, any such "right" was extinguished ***a full year and five months* prior to the conveyance of Twin Lakes Park**. Thus, Plaintiffs' procedural due process claim cannot be based on the previous language of the County Owned Real Property Acquisition and Disposal Policy since the policy, as amended, did not require the county to "consult with an affected and/or adjacent local unit of government and property owner" in a transaction involving a conveyance to another municipality where the use does not change.

Because Plaintiffs cannot cite to a constitutionally protected property interest, their procedural due process claim fails, and summary judgment is warranted.

> iii. *Plaintiffs' only remaining interest is the same as the general public which cannot support a claim for procedural due process violations.*

Because neither Plaintiffs' status as neighboring landowners nor the former County Owned Real Property Acquisition and Disposal Policy creates a protected property interest, Plaintiffs' only interest at stake is that of a member of the general public, but protected "[p]roperty rights are tailored and narrowly defined interests that are under the possession and control of individuals, ***not the public***." *Davis*, 500 F. Supp. 3d at 647 (citing *Risko v. Grand Haven Charter Tp. Zoning Bd. of Appeals*, 284 Mich. App. 453 (2009)) (emphasis added). In *Davis*, a county resident brought

{02144928-1 }

an action against the county clerk, alleging a procedural due process violation resulting from clerk's

failure to keep office the open all day on the date of a primary election. Plaintiff attempted to claim

a property right by citing a Michigan state law requiring the Clerk's Office to be open on election

days. The Court rejected the notion that such a provision creates an individual property interest.

*Id*. at 647–48. The court explained:

> The availability of a Clerk's Office is not an individualized right or
> entitlement; ***it is not an exclusive benefit reserved to Plaintiff.*** . . .
> Plaintiff has no ownership interest or legal title in the Clerk's Office
> and does not "possess, use, [or] enjoy" it himself. *Risko*, 773
> N.W.2d at 735-36; *see also Mich. Bell Tel. Co. v. Dep't of Treasury*,
> 445 Mich. 470, 478, 518 N.W.2d 808 (1994) (quotations removed)
> (finding that "property" includes "everything which is the subject of
> ownership" and "legal title"). The Clerk's Office is ***open for the
> benefit of the public and the citizens of Michigan as a whole. No
> single individual has power, control, or access to it***.
>
> Plaintiff's remaining claim is ***not based in property rights***; it is a
> generalized complaint of government action taken against state law.
> ***Yet that, by itself, does not state a valid procedural due process
> claim.*** . . .The remaining count against Defendant will be dismissed.
> *Id*. at 648 (emphasis added).

Likewise, in this case, Plaintiffs' due process claim "is ***not based in property rights***; it is a

generalized complaint of government action" taken by the County. Disputes over the efficacy and

wisdom of certain governmental decisions are an expected, natural part of the democratic process,

but such disagreements are not indicative of constitutional violations.

The present circumstances are distinguishable from situations involving true due process

deprivations. Compare the case at bar with *Warren*, 411 F.3d 697, where owners of a Dairy Queen

ice cream store brought § 1983 action against city and city prosecutor, alleging the defendants

violated their constitutional rights by installing barricades that restricted access to the store from

the street. The District Court dismissed the damages claims against defendants and issued an

injunction permanently enjoining the city from restricting access to the store. The Court of Appeals

{02144928-1 }

affirmed and, among other things, held that the city's placement of barricades violated owners' procedural due process rights because the case concerned the right of access to their property. *Id.* at 708-709. The court noted that "a landowner's property interest is infringed even when a government blocks off only part of the property's access to public roads." *Id.* at 709. "According to these principles, then, the City of Athens clearly deprived the Warrens of a property interest by erecting barricades across one of the two means of access to their Dairy Queen." *Id.* In contrast, in this case the County has not taken any action involving or impacting Plaintiffs' property. Instead, the County simply conveyed ownership of Twin Lakes Park to Long Lake Township— a decision that affects all County residents equally.

In the zoning case *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991), the Sixth Circuit distinguished violations of procedural due process from legislative acts of general applicability which do not trigger due process concerns:

> ***Governmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard***. But, when a relatively small number of persons are affected on individual grounds, the right to a hearing is triggered. Falling into that latter category is the situation where, during the amendment process, a governmental unit singles out and specifically targets an individual's property for a zoning change after notice of a general plan of amendment has been published. *Id.* at 896 (emphasis added).

In this case, the County did not "single[] out and specifically target[]" Plaintiffs' property such that they were required to provide Plaintiffs with notice and an opportunity to be heard. Plaintiffs' procedural due process rights were not violated, and summary judgment is warranted.

> iv. *Plaintiffs had adequate notice and opportunity to be heard regarding the transfer of Twin Lakes Park to Long Lake Township.*

The Sixth Circuit has explained that even if property owners were deprived of a protected property interest, summary judgement is appropriate when the facts demonstrate they received

{02144928-1 }

adequate due process. *Dubuc v. Twp. of Green Oak*, 406 Fed. Appx. 983 (6th Cir. 2011). The Court explained:

> The [Plaintiffs] cannot claim that they did not have prior notice of this alleged deprivation, as they have admitted that [Plaintiff] submitted letters with information regarding the nonconforming use of the property…. This shows that [Plaintiff] had actual notice of the impending determination. *Id*. at 987.

Even if Plaintiffs possessed protected property interest, ***which they do not***, their procedural due process claim based on "lack of notice and opportunity to be heard" is disingenuous at best as the record is unequivocal that Plaintiffs were well aware of the County's intention to transfer ownership of Twin Lakes Park and they had ample opportunity to be heard.

Specifically, Plaintiff Gallagher acknowledged that prior to September 8, 2023 he was aware Grand Traverse County was discussing transferring Twin Lakes Park to Long Lake Township and he could have expressed any opinion he had on the topic to either Grand Traverse County or Long Lake Township. Mr. Gallagher personally did nothing to express his objection to the transfer, but his daughter had the opportunity to attend Grand Traverse County meetings and express opposition to the transfer. **Exhibit I**, pgs. 47-48, 58. Similarly, Plaintiff McCall testified he and Mr. Gallagher's daughter were aware of discussions of a possible transfer as early as 2021. **Exhibit L**, pgs. 68-69. Mr. McCall was able to voice his opposition to the transfer in the local paper over one year before the transfer. *Id*. at 88; **Exhibit M**. He also acknowledged having the opportunity to submit his opposition to the transfer of Twin Lakes Park in writing to Grand Traverse County (**Exhibit E**); **Exhibit L**, pg. 82. Finally, he conceded that that he could have gone to any meeting of the Grand Traverse County Board of Commissioners and had three minutes to address that body during public comment. *Id*. at 74.

The undisputed evidence is clear. Plaintiffs were well aware of the ongoing discussions to transfer Twin Lakes Park to Long Lake Township for years prior to the actual conveyance. They

{02144928-1 }

had the opportunity to attend meetings on this issue and speak during public comment. Plaintiffs cannot now claim they were not provided with notice and an opportunity to be heard simply because the County ultimately acted in a manner they disagreed with.

Because Plaintiffs have not demonstrated that they possessed a protected property or liberty interest, much less that they were deprived of that interest, Plaintiffs' claim for a violation of procedural due process must be dismissed. If the Court grants this motion and dismisses the due process claim, the only federal claim asserted by Plaintiffs, the Court should dismiss the remaining state law claim. *Taylor v. First of America Bank-Wayne,* 973 F.2d 1284, 1287 (6th Cir. 1992) ("when 'all federal claims are eliminated before trial, the balance of factors…will point toward declining to exercise jurisdiction….'"); *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1412 (6th Cir. 1991) (only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial.").

> b. *There is no genuine issue of material fact as to whether Grand Traverse County's conveyance of Twin Lakes Park violated any restrictive covenant and summary judgment in favor of Grand Traverse County is warranted.*

Plaintiffs claim Grand Traverse County violated restrictive covenants contained in the deeds conveying the lands that makes up Twin Lakes Park when it conveyed the park to Long Lake Township. ECF No. 1, PageID. 6-10. In an attempt to support their argument, Plaintiffs rely on two words—"county park"—that appear in only three (3) of the five (5) deeds. See ECF No. 1-4, PageID. 31; ECF No. 1-7, PageID. 40; and ECF No. 1-8, PageID. 42. Plaintiffs read those two words to mean Grand Traverse County could never divest itself of ownership of the lands even if, as here, the lands continue to be used as a park open to all residents of Grand Traverse County.

Restrictive covenants "are to be strictly construed against the would-be enforcer...and doubts resolved in favor of the free use of property." *Stuart v. Chawney*, 454 Mich. 200, 210 (1997). When construing a restrictive covenant, courts may only give it a fair construction; courts may not broaden or limit the restriction. *Kelly v. Carpenter*, 245 Mich. 406, 409 (1929). "To that end, courts will not infer the existence of a restriction—the restriction must be expressly provided in the controlling documents." *Conlin v. Upton*, 313 Mich. App. 243, 256 (2015) (citing *Margolis v. Wilson Oil Corp*, 342 Mich. 600, 603 (1955) (where a restriction contained "no express prohibition…[n]one will be implied")). "Courts will not enlarge or extend a restriction through interpretation, even to accomplish what it may be thought the parties would have desired had a situation that later developed been foreseen by them at the time the restriction was written." *Conlin*, 313 Mich App at 256-57.

Where, as here, an instrument is ambiguous, the court may look to the circumstances surrounding its formation to ascertain the grantor's intent. *Benton Harbor Fed'n of Women's Clubs v. Nelson*, 301 Mich. 465, 471 (1942); *see also McHenry v. Ford Motor Co.*, 146 F. Supp. 896, 900 (E.D. Mich. 1956), *aff'd sub nom. McHenry v. Ford Motor Co..*, 261 F.2d 833 (6th Cir. 1958), *on reh'g sub nom. McHenry v. Ford Motor Co.*, 269 F.2d 18 (6th Cir. 1959) ("If the deed indicates an ambiguity or some uncertainty, the court may also consider the subject matter and attending circumstances in determining the intention of the parties").

To interpret the deed language as Plaintiffs suggest would amount to a restraint on alienation. Such restraints are generally disfavored under Michigan law, but they are permissible in this context.[9] Where restraints on alienation "are permitted, they are strictly construed to prevent

---

9 See M.C.L. 554.381 (providing that "[n]o statutory or common law rule of this state against…restraint of alienation shall hereafter invalidate any gift, grant, devise or bequest, in trust or otherwise, for public welfare purposes").

{02144928-1 }

a forfeiture." *Lemon v. Nicolai*, 33 Mich. App. 646, 649 (1971). "Michigan has consistently recognized that where a deed is ambiguous, its words are to be construed strongly against the grantors" and resolved in favor of the least restrictive restraint. *Old Mission Peninsula School Dist. v. French*, 362 Mich. 546, 550-51 (1961) (citing with approval Restatement (First) of Property § 418 (1944)).[10] Specifically, § 418 provides that "[w]hen a limitation is asserted to have created a restraint on alienation…, but under one of two or more possible constructions there is no restraint, such construction is preferred."

Again, Plaintiffs are advocating for what amounts to a restraint on alienation to prevent Grand Traverse County from ever selling Twin Lakes Park. Such a severe restraint is, at minimum, unclear based on the above language requiring that the lands conveyed by Judge Gilbert be used as a "county park." Given this ambiguity, we look to the circumstances surrounding those conveyances to ascertain Judge Gilbert's likely intent.

Before his first conveyance to Grand Traverse County, Judge Gilbert indicated "[i]t [was his] **thought** to convey [the first parcel] to the county as a county park, **to be used for any purpose consistent therewith**, and particularly…[f]or use of 4-H clubs, their members and guests, including, of course, their parents on occasion", "[f]or members of the Grange or any similar farm organization, when available", and "[t]o be used by and let for use to any other group, particularly of young people, to be used for the same purpose; that is to say, recreation, camping, occupation in connection with camp life…and possibly on occasion Boy Scouts and Girl Scouts; all subject to the approval of trustees **or other parties having lawful charge of the property**." ECF No. 1-3, PageID. 27 (emphasis added). In other words, Judge Gilbert clearly expressed only that he

---

10 Accord *Thomas v. Steuernol*, 185 Mich. App. 148, 155 (1990) (holding that "[d]eeds should be strictly construed against the grantor so as to give the grantee the greatest estate that the deed's terms will permit; any reservation or exception by the grantor must be narrowly construed").

{02144928-1 }

wanted the lands conveyed to be used for any purpose consistent with a county park and that use of the park would be subject to the approval of the county or any other party having lawful charge of the property, a tacit acknowledgment that the party having charge of the park might not always be Grand Traverse County. Absent from all three of Judge Gilbert's deeds is any clear indication that Judge Gilbert's gifts were contingent on Grand Traverse County forever owning Twin Lakes Park. As a jurist, Judge Gilbert no doubt knew how to clearly express a desire that the land be forever owned by Grand Traverse County. Indeed, in another gift made to Long Lake Township in 1925, Judge Gilbert expressly provided that the dedicated land was to "**at all times** be under control of and policed and cared for **by the Township Board of said Township**…" ECF No. 39-2, PageID. 351 (emphasis added).

Applying the above principles, given the ambiguity, we must interpret the deed strictly against the original grantor and find the least restrictive restraint possible. Quite simply, these deeds can be interpreted not to include a restraint on alienation, merely a restrictive covenant requiring Twin Lakes Park to be used for any purpose consistent with a county park—i.e. a park open to all county residents. There is no genuine issue of material fact that this restraint on use has not been violated here. Twin Lakes Park continues to be used for a purpose consistent with a county park given that it remains open to all residents of Grand Traverse County. That conclusion does not change by virtue of the fact that Twin Lakes Park is now under the stewardship of Long Lake Township. Summary judgment is warranted as to Count I.

## Conclusion

Plaintiffs have embarked on an ill-conceived mission to overturn the will of the duly elected members of the Grand Traverse County Board of Commissioners to convey Twin Lakes Park to Long Lake Township. However, dismissal of Plaintiffs' remaining claims is warranted for

{02144928-1 }

several reasons. First and foremost, Plaintiffs lack standing to bring this claim. Second, even if Plaintiffs arguably have standing, their procedural due process claim fails because they cannot establish a legally-protected property interest they were deprived without notice and an opportunity to be heard. Because that claim fails, this Court should decline to exercise supplemental jurisdiction over the remaining state law claim. Third and finally, even if this Court decides to address the merits of Plaintiffs' claim alleging Grand Traverse County violated restrictive covenants contained in the deeds conveying the parcels that make up Twin Lakes Park, that claim should also be dismissed. Applying well-settled principles of interpretation, Judge Gilbert's deeds are, at minimum, ambiguous as to whether they required Grand Traverse Court to forever own Twin Lakes Park. That ambiguity must be resolved against the grantor and in favor of the least restrictive restraint. Applying those principles here, summary judgment is warranted because Grand Traverse County did not violate any restrictive covenant when it conveyed Twin Lakes Park to Long Lake Township. Twin Lakes Park was a public park open to all county residents before the conveyance, and it remains so to this day.

**WHEREFORE** Defendant Grand Traverse County respectfully that this Honorable Court grant their Motion for Summary Judgment and dismiss requests Plaintiffs' Verified Complaint in its entirety and with prejudice.

Dated:  October 7, 2024

CUMMINGS, McCLOREY, DAVIS
& ACHO, P.L.C.

_____
Matthew W. Cross (P77526)
Attorney for Def. GRAND TRAVERSE
COUNTY
310 W. Front Street, Ste. 221
Traverse City, MI 49684
(231) 922-1888/(231) 922-9888 Fax
mcross@cmda-law.com

{02144928-1 }

## **CERTIFICATE OF COMPLIANCE REGARDING WORD COUNT**

Defendants, in compliance with L.Civ.R. 7.3(b)(i), used 10,402 words in their Brief in Support of Motion for Summary Disposition. Microsoft Word Office 365 is the word processing software used to generate the word count in the attached brief.

Respectfully submitted,

Dated:  October 7, 2024

CUMMINGS, McCLOREY, DAVIS
& ACHO, P.L.C.

_____
Matthew W. Cross (P77526)
Attorney for Def. GRAND TRAVERSE
COUNTY
310 W. Front Street, Ste. 221
Traverse City, MI 49684
(231) 922-1888/(231) 922-9888 Fax
mcross@cmda-law.com

31

{02144928-1 }