UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES GALLAGHER, Trustee of the James
K. & Patsy A. Gallagher Trust, and CHAZZ
MCCALL, Trustee of the Charles William
McCall Trust,                                                          Case No. 1:23-cv-1363

      Plaintiffs,                                             HON. JANE M. BECKERING

v.

COUNTY OF GRAND TRAVERSE and
CHARTER TOWNSHIP OF LONG LAKE,

      Defendants.
_____/

## OPINION AND ORDER

This case concerns the Twin Lakes Park ("the Park"), which is located in Michigan in the Charter Township of Long Lake ("the Township") and County of Grand Traverse ("the County"). Plaintiffs, who own property that lies adjacent to the Park, initiated this action against the County and the Township under this Court's federal-question jurisdiction.  Pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 55, 59, & 62).  For the following reasons, the Court grants Defendants' motions as to Plaintiffs' federal claim, declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims, and therefore dismisses the motions as moot as to Plaintiffs' state-law claims.  Because this Opinion and Order resolves all pending claims, this Court will also enter a Judgment to close this case.  *See* FED. R. CIV. P. 58.

## I.  BACKGROUND

### A.  Factual Background

1.    __The Creation of the Park__

Five conveyances of land created the Park.  First, on September 23, 1941, Parm Gilbert (Gilbert) conveyed 25 acres to the County for $1.00 (JSMF[1] ¶ 1).  The property description stated that "[t]hese lands so conveyed to Grand Traverse County as a county park, to be owned, improved and used as such and for recreation purposes" (*id.*, quoting 9/23/41 Indenture, ECF No. 1-4 at PageID.31).

Second, on August 28, 1943, Gilbert conveyed an additional ten acres to the County for $1.00 (*id.* ¶ 2).  The property description stated that "[t]his property is conveyed to Grand Traverse County as a gift and as part of and addition to County Park to be owned, improved, and used as such, and for recreation purposes and programs" (*id.*, quoting 8/28/43 Indenture, ECF No. 1-7 at PageID.40).

Third, on May 11, 1944, Gilbert conveyed 40 acres to the County for $1.00 (*id.* ¶ 4).  The property description stated that "[t]hese premises are conveyed as a gift to Grand Traverse County to be owned, used and improved as a County Park and for recreation purposes. This parcel is in addition to lands heretofore conveyed by same grantor to said county for similar purposes as shown by conveyances now on record in office of Register of Deeds, Grand Traverse County, Michigan" (*id.*, quoting 5/11/94 Indenture, ECF No. 1-8 at PageID.42).

Fourth, on June 22, 1967, Wilbert and Beulah Lautner ("the Lautners") conveyed 40 acres to the County for $1.00 "Dedicated to Grand Traverse County 4-H Club Leader's Association. To

---

[1] Unless otherwise noted, and for purposes of resolving only the motions at bar, the Court derives the factual background from the parties' Joint Statement of Material Facts (ECF No. 58).

be used as Nature Study and recreational area" (*id.* ¶ 4, quoting 6/22/67 Deed, ECF No. 1-9 at PageID.44).

Last, on December 29, 1972, Frank and Dorothy Stulen ("the Stulens") conveyed 40 acres to the County for $12,500.00 (*id.* ¶ 5).  The property description stated: "For recreational and educational use" (*id.*, quoting 12/29/72 Deed, ECF No. 1-10 at PageID.46).

Plaintiff James Gallagher (Gallagher), as Trustee of the James K. & Patsy A. Gallagher Trust (the "Gallagher Trust"), resides at property in Long Lake, Michigan described as the "Gallagher Farm" (Gallagher Dep. [ECF Nos. 56-5 & 59-9] at 8–10; Compl. ¶¶ 1–2).  The Gallagher Farm borders the Southeast side of the Park (Gallagher Dep. at 10–11; Compl. ¶¶ 3–4). Plaintiff Chazz McCall (McCall), as Trustee of the Charles Willliam McCall Trust (hereinafter, the "McCall Trust"), also resides in Long Lake, Michigan at property described as "McCall's Frontage" (McCall Dep. [ECF Nos. 56-2 & 59-12] at 7; Compl. ¶¶ 5–6).  McCall's Frontage borders the Southwest side of the Park (McCall Dep. at 104; Compl. ¶¶ 7–8).  The County included the following graphic (ECF No. 59 at PageID.559) of the relevant parcels of land:



3

2.      **The Conveyance of the Park to the Township**

In spring 2021, McCall first learned of discussions about the Township potentially purchasing the Park from the County (McCall Dep. at 68, 88).  At that time, a group from the Township went to the Park and took a tour (*id.* at 68).  In late fall 2021, McCall talked to Gallagher's daughter, Kay Ingraham (Ingraham), who told him that the Township was, in fact, purchasing the Park (*id.* at 69–72, 88).  In early January 2022, McCall watched a video recording of a January 5, 2022 meeting of the County Board of Commissioners regarding the potential transfer of the Park to the Township (*id.* at 77–82, 88).  *See also* 1/5/22 Cnty. Mtg. Agenda (ECF No. 65).

On January 13, 2022, McCall wrote a letter to a member of the County Parks and Recreation Department ("Parks and Rec") indicating that he had "reviewed the Long Lake Township proposal and request for a transfer of deed" (McCall Letter [ECF Nos. 56-3 & 59-5]). He noted that in the Township's plan, "[m]ost, if not all, of the identified activities already take place at the park…." (*id.*).  He nonetheless expressed his opposition to the transfer and requested that Parks and Rec communicate his opposition to the County Commissioners (*id.*). At his deposition, McCall acknowledged that his opposition was communicated to the County Commissioners (McCall Dep. at 83).  McCall admitted being aware that he could also attend the County meeting and make public comment (*id.* at 74).

On March 3, 2022, the Traverse City newspaper ran an article in which McCall again expressed his opposition to the project and noted that McCall had reviewed the Township's proposal and was concerned that the proposal "does not indicate a prioritization of the preservation of the land" (3/3/2022 Article [ECF Nos. 56-4 & 59-13]).

At his deposition, Gallagher testified that he was likewise aware of the potential transfer of the Park before it occurred (Gallagher Dep. at 48).  He agreed that he could have brought his opinions to the County (*id.*).  He pointed out that while he personally did not do "anything" to express his opposition, his daughter, Ingraham, who is his successor trustee, shared his opposition to the transfer and had "been handling everything," including attending the Township meetings, where she had the opportunity to make a statement (*id.* at 10, 12, 48–49, 58).

Before March 16, 2022, the County had in place a "Real Property Acquisition and Disposal Policy" that, in pertinent part, required the County to "consult with an affected and/or adjacent local unit of government and property owner from which the parcel is located and notify them of the intended disposal of real property" (Disposal Policy, ECF No. 1-14 at PageID.65).  On March 16, 2022, the County Board of Commissioners amended the Disposal Policy to provide that the policy "does not apply to…county owned property that is being transferred to another municipality and that property will maintain the intended use" (Amended Disposal Policy, ECF No. 1-15 at PageID.71–73; 3/16/22 Meeting Minutes, ECF No. 59-6).  At that same meeting, the Board of Commissioners approved the transfer of the Park to the Township (3/16/22 Meeting Minutes, ECF No. 59-6).  Despite being approved on March 16, 2022, the transfer of the Park from the County to the Township was not immediately effectuated as both entities performed their due diligence and negotiated a purchase agreement. While the County and the Township negotiated the transfer, residents—including Ingraham—voiced their opposition to the transfer.  *See*, *e.g.*, 5/14/22 Email from Nancy Will to County, ECF No. 59-7; and 4/18/23 Email Exchange between Ingraham & County, ECF No. 59-8.

The record indicates that the Township held at least four separate Township Board meetings—January 13, 2022; February 8, 2022; December 8, 2022; and July 11, 2023—at which

the Park was listed as an agenda item, public comment was permitted, and the minutes were posted on the Township website (Agendas/Minutes [ECF No. 56-6]).  The parties do not appear to dispute that notice for the meetings was properly made in accordance with the Open Meetings Act.

On September 6, 2023, the County voted to repeal its ordinance regulating the Park (ECF No. 1-13), effective upon the transfer of the Park to the Township (9/6/23 Cnty. Mtg. Agenda, ECF No. 66).  On September 8, 2023, the County conveyed all five parcels to the Township for $1.00, subject to the following provision:

> The Grantee, by acceptance of this deed, hereby covenants to keep the above described Property open as a public park and available to residents of Grand Traverse County in perpetuity, that Grantee shall permit the Grantor to use the Property and its facilities four times (of one day each) each calendar year without cost and that Grantee shall adhere to all applicable deed restrictions. Violation of any of the deed restrictions shall trigger a right of reentry. Grantor shall also have a right to repurchase the Property from Grantee for One (1) Dollar ($1.00) should Grantee elect to dispose of the Property, and in that event, Grantee shall repay Grantor any amounts it was paid as a capital improvement subsidy pursuant to Section 10(d) of the Purchase Agreement between Grantor and Grantee.

(JSMF ¶ 6, quoting 9/8/23 Quit Claim Deed, ECF No. 1-11 at PageID.48–50).  With the transfer effectuated and the County having repealed its ordinance regulating the Park, the Township enacted its own ordinance regulating the park (Twp. Ordin. No. 197, ECF No. 59-11).

Plaintiffs believe that the conveyance will raise their taxes (Gallagher Dep. at 24, 39–40; McCall Dep. at 53–57).  McCall also testified to his belief that the County was more effective at enforcing the Park rules than the Township, and he opined that his property value will suffer with the "loss of protection" and the resulting "destruction of the natural scene around the lake" (McCall Dep. at 13–15, 57–59, 61–63).  Both Plaintiffs acknowledge that the Park remains open for use by County residents (Gallagher Dep. at 17–18, 26–27; McCall Dep. at 36, 38–40).

**B.  Procedural Posture**

A few months after the conveyance to the Township, on December 28, 2023, Plaintiffs initiated this action with the filing of a Verified Complaint (ECF No. 1), alleging that the County's "current Board of Commissioners has forgotten the past, failed to honor the intent of the dedicators, and violated the restrictive covenants by dispossessing the County of ownership, use, and improvement of Twin Lakes County Park" (Compl. ¶ 31).  Plaintiffs allege the following five claims:

I.      Quiet Title/Enforcement of Restrictive Covenants/Equitable Relief

II.     Due Process Violation/42 U.S. Code § 1983

III.    Breach of Implied Contract

IV.     Equitable Estoppel

V.      Declaratory Judgment

(ECF No. 1).  On July 3, 2024, the parties stipulated to dismissing Counts III and IV of the Verified Complaint, and this Court granted their Stipulation (Order, ECF No. 28).  Hence, only the federal claim in Count II and the two overlapping state-law claims in Counts I and V remain in this case.

On October 7, 2024, the parties filed their respective motions for summary judgment.  The Township (ECF No. 55) and the County (ECF No. 59) seek summary judgment of all three remaining claims.  Plaintiffs filed a combined response in opposition to their motions (ECF No. 78), to which the Township (ECF No. 80) and the County (ECF No. 81) filed their respective replies.  Plaintiffs filed a motion, too, seeking summary judgment of Count I (ECF No. 62).  The Township (ECF No. 75) and the County (ECF No. 76) filed their respective responses in opposition to Plaintiffs' motion.  Plaintiffs filed a combined reply to their responses (ECF No. 82).  Having

considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented.  *See* W.D. Mich. LCivR 7.2(d).

## II.  ANALYSIS

### A.  Motion Standard

The parties' motions are filed pursuant to Federal Rule of Civil Procedure 56.  A party may move for summary judgment, identifying each claim on which summary judgment is sought.  FED. R. CIV. P. 56(a).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*

In resolving a motion for summary judgment, a court must consider the evidence and all reasonable inferences in favor of the nonmoving party.  *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted).  The moving party has the initial burden of showing the absence of a genuine issue of material fact.  *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010).  The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  *See also El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (a verified complaint "carries the same weight as would an affidavit for the purposes of summary judgment") (citations omitted).

The function of the court is not "'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (quoting *Anderson*, 477 U.S. at 249).  "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"  *Burgess*, 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "The ultimate inquiry is 'whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sierra Brokerage Servs.*, 712 F.3d at 327 (quoting *Anderson,* 477 U.S. at 251–52).

When evaluating cross-motions for summary judgment, the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506–07 (6th Cir. 2003); *see also Harris v. City of Saginaw*, 62 F.4th 1028, 1032–33 (6th Cir. 2023) (describing the "hat switch courts perform when evaluating cross-motions for summary judgment"). "The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate." *Parks v. LaFace Records,* 329 F.3d 437, 444 (6th Cir. 2003).

## B.  Discussion

### 1.  <u>Standing to Bring Federal Claim</u>

The Court turns first to considering the arguments for dismissal of Count II as the federal claim therein forms the basis for the Court's original jurisdiction over the subject matter of this case.  The County argues that Plaintiffs lack standing to bring their claims, including Count II. "Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (emphasizing that there is no "doctrine of 'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt")). "[S]tanding is not dispensed in gross," and an individual "must demonstrate standing for each claim he seeks to press" and "for each form of relief sought." *Waskul v. Washtenaw Cnty. Cmty.*

*Mental Health*, 900 F.3d 250, 253 (6th Cir. 2018) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), and *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

To establish the "irreducible constitutional minimum of standing" under Article III, a plaintiff must show: (1) that they suffered actual injury; (2) that the injury is traceable to the challenged action of the defendant; and (3) that the injury may be redressed by a favorable decision. *Lujan*, 504 U.S. at 560. A plaintiff must show "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). A plaintiff must have more than "a general interest common to all members of the public." *Lance v. Coffman*, 549 U.S. 437, 439–40 (2007) (per curiam) (citation omitted).

"The party invoking federal jurisdiction bears the burden of establishing these elements," and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. At the summary judgment stage, the plaintiff must "set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* (citations and internal quotation marks omitted).

The County argues that Plaintiffs lack Article III standing because they fail to demonstrate they have suffered an invasion of a legally protected property interest under Michigan law (ECF No. 59 at PageID.569–574; ECF No. 81 at PageID.965–967). According to the County, Plaintiffs "have no proof to support their claims" (ECF No. 81 at PageID.967).

The Court is cognizant of the instruction of the United States Supreme Court that courts assessing standing may not "raise the standing hurdle higher than the necessary showing for success on the merits in an action." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,

528 U.S. 167, 181 (2000).  Within the due process context, which is this Court's focus, the Sixth Circuit has further observed, albeit in an unpublished opinion, that "injury in fact and the merits of whether a protected property interest exists when a party brings a procedural due process claim are often intertwined."  *Brooks v. Butler Cnty., Ohio*, No. 21-4129, 2022 WL 2526601, at *4 (6th Cir. July 7, 2022).  The Sixth Circuit cautioned that "[t]he two are separate analyses," and "just because a plaintiff's claim might fail on the merits does not deprive the plaintiff of standing to assert it."  *Id.*  According to the Sixth Circuit, "[o]nly if the claimed protected interest is 'wholly insubstantial and frivolous' does a claim's failure on its merits turn into a jurisdictional defect."  *Id.* (quoting *Steel Co.*, 523 U.S. at 89).

For example, the plaintiffs-landowners in *Brooks*, some of whom directly abutted a proposed Dollar General store, alleged a violation of their constitutional procedural due process rights and sought injunctive relief to halt the implementation of the variances.  The Sixth Circuit indicated that the plaintiffs, whose case was at the motion-to-dismiss stage, had satisfied their burden of demonstrating standing where their complaint specifically alleged how the variance approval would impact their use and enjoyment of their land.  *Brooks*, 2022 WL 2526601, at *5.  The Sixth Circuit separately analyzed the merits of the plaintiffs' claim and ultimately affirmed the district court's decision to deny them injunctive relief inasmuch as the Sixth Circuit agreed with the district court that the plaintiffs were unlikely to succeed on the merits of their claim.  *Id.* at *5–7.  *See also CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021) (determining that the district court "mistook the substantive requirements of the Fifth Amendment's Takings Clause for the jurisdictional requirements of Article III").

Here, while the evidence of Plaintiffs' injuries—physical, economic, and/or intangible—is meager, the Court is disinclined to conclude that Plaintiffs' claimed interest is "wholly

insubstantial and frivolous" such that this Court lacks jurisdiction to proceed with the merits of their federal claim. Plaintiffs' properties are uniquely situated in proximity to the Park, making their due process concerns about the Park tied more closely to their own property interests than those of the general public, even if their due process claim is not ultimately supported by the law or their proofs. *Cf. Norton v. Beasley*, No. 21-6053, 2022 WL 17348385, at *8 (6th Cir. Dec. 1, 2022) ("It is true that property owners bringing claims relating to their real properties often have no difficulty establishing standing."). The Court concludes that Plaintiffs' alleged injuries flowing from Defendants' actions (or omissions) are sufficient to proceed to the merits of their federal claim.

**2.    The Merits of Plaintiffs' Federal Claim**

Plaintiffs' federal claim in Count II is brought under 42 U.S.C. § 1983, which makes "liable" "[e]very person" who "under color of" state law "subjects, or causes to be subjected," another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution[.]" Section 1983 does not confer substantive rights but merely provides a statutory vehicle for vindicating rights found in the United States Constitution. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021). To bring a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020) (citation omitted). A court's threshold inquiry under § 1983 is to identify the specific constitutional right at issue. *Dibrell, supra.* Once the right is identified, the court must then consider the statutory "elements of, and rules associated with, an action seeking damages for its violation" under § 1983. *Id.*

Here, while Plaintiffs' allegations in Count II describe various due process concerns, *see* Compl. ¶¶ 82–100, their briefing reveals that they have since narrowed the focus of their claim in Count II to the due process to be afforded them regarding the perceived "change in use" of the Park.  In their "Summary of Argument," Plaintiffs provide the following synopsis:

> Plaintiffs as abutting property owners, claim that their procedural due process rights were violated when the County put Twin Lakes County Park to a different use than the individual grantor, Judge Gilbert, specified in the controlling documents. Before a change in use is effective, Plaintiffs believe they are entitled to direct notice of their rights, a meaningful opportunity to be heard, and the right to enjoin any change in use.

(ECF No. 78 at PageID.919).

The Due Process Clause of the Fourteenth Amendment protects persons against State deprivations "of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV. "The Supreme Court has described 'the root requirement' of the Due Process Clause as notice and an opportunity to be heard before one is deprived of a significant property interest."  *Wedgewood Ltd. P'ship I v. Twp. Of Liberty*, 610 F.3d 340, 354 (6th Cir. 2010) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).

To establish a procedural-due-process claim in a § 1983 action, "plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment ..., (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest."  *Cooperrider v. Woods*, 127 F.4th 1019, 1042 (6th Cir. 2025) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)). "Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest will the court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated his rights to due

13

process." *600 Marshall Ent. Concepts, LLC v. City of Memphis*, 705 F.3d 576, 587–88 (6th Cir. 2013) (citation omitted).

The Township argues that Plaintiffs' procedural due process claim fails as a matter of law because (1) Plaintiffs do not have a 14th Amendment protected property interest in the Park being owned by the County; and (2) even if Plaintiffs had a protected property interest in a neighboring municipal park, they have not been deprived of that interest since the property remains a park open to County residents in perpetuity; and (3) the Township provided Plaintiffs with adequate procedural due process by holding multiple properly noticed meetings at which Plaintiffs had an opportunity to be heard (ECF No. 56 at PageID.476–480).

The County similarly argues that Plaintiffs cannot sustain their due process claim. The County argues that (1) Plaintiffs do not possess a constitutionally protected property interest in the County's continued ownership of the Park merely by virtue of being neighboring property owners, and the prior iteration of the County's Disposal Policy did not create a property or liberty interest in Plaintiffs; (2) Plaintiffs have no injury where the Park is still a park; and (3) Plaintiffs had adequate notice and opportunity to be heard regarding the transfer of the Park to the Township (ECF No. 59 at PageID.576–583).

In response, Plaintiffs argue that they have a protected property interest arising from their status as "twice affected taxpayers (County and Township)" and "abutting owners [with] a special right to insist that the specified use shall not be appropriated to other uses" and/or "beneficiaries of the covenant," i.e., "stewards of protecting the grantor's specified purpose from the government's abuse of its authority under color of law" (ECF No. 78 at PageID.922–924). Plaintiffs also argue that the County's original Disposal Policy "created in them a vested property right to be notified and consulted before disposal of the Park" (*id.* at PageID.935–936). Regarding

14

the second element of their claim, Plaintiffs argue that "[p]roof of actual injury from a procedural due process violation is irrelevant" (*id.* at PageID.925–926).   Third, Plaintiffs assert that "[t]o transfer ownership of Judge Gilbert's 96-acres, the process requires the County to obtain the surrender or conveyance of Plaintiffs by appropriate waivers, releases, deeds or condemnation proceedings" (*id.* at PageID.937).   According to Plaintiffs, "[t]he process should be [the] same as for interested persons and creditors in condemnation proceedings and probate proceedings: direct notice, or explaining why direct notice could not be accomplished, before resorting to nail and mail, email, or publication of a legal notice" (*id.* at PageID.939).

Defendants are entitled to judgment as a matter of law on Count II.

***No Interest Protected by the Due Process Clause of the Fourteenth Amendment.*** Turning to the first element, "[p]roperty interests … are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Wedgewood*, 610 F.3d at 352 (quoting *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972)).   "Property interests protected by the due process clause must be more than abstract desires for, or attractions to, a benefit." *600 Marshall*, 705 F.3d at 587–88 (quoting *Board of Regents*, 408 U.S. at 577).   A plaintiff must have "more than a unilateral expectation of it." *Board of Regents*, 408 U.S. at 577.

Plaintiffs do not identify any restrictive covenant involving their property, and they do not identify any authority supporting the proposition that mere proximity to land that is subject to a restrictive covenant creates a protected property interest in the use of the Park. *See, e.g., Brooks*, 2022 WL 2526601, at *7 (rejecting the plaintiffs-landowners' argument that they have a property interest in either "the existing zoning classifications of nearby or neighboring properties" or "a

neighboring property's non-variance from applicable zoning requirements").  *Cf. Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 493 (6th Cir. 2019) (indicating that "Michigan courts construe restrictive covenants 'strictly against those claiming to enforce them, and all doubts [are] resolved in favor of the free use of the property[.]'") (internal citations and quotations omitted).

While the former version of the County's Disposal Policy would have required notice about the conveyance to the Township, the policy itself does not create a property interest.  "'Property' cannot be defined by the procedures provided for its deprivation…"  *Loudermill*, 470 U.S. at 541. "The right to due process 'is conferred, not by legislative grace, but by constitutional guarantee.'" *Id.* (citation omitted).  In any event, any such property "right" created by the former version of the Policy was extinguished many months before the County's conveyance of the Park to the Township, and the current version of the Policy eliminates notice where the property will "maintain the intended use."

Plaintiffs rely heavily on the 1954 holding in *Baldwin Manor, Inc. v. Birmingham*, 67 N.W.2d 812 (Mich. 1954).  In *Baldwin*, a parcel of property was conveyed to the then-village of Birmingham to "be used ... for the purposes of a park and for that only, and if not so used it is to revert to [the grantor's] heirs."  *Id.* at 813.  Birmingham proposed to construct a highway through part of the park, and the plaintiffs, who were landowners abutting the park, objected.  *Id.* at 813– 14.  The Michigan Supreme Court held that, "[u]nder the circumstances of this case," "the contemplated use of 'Baldwin Park' for highway purposes constitutes a diversion from the specified use set forth in Mrs. Baldwin's conveyance."  *Id.* at 817.  The Michigan Supreme Court restrained Birmingham from taking the action in question "unless and until it has obtained from parties having special interests in the maintenance of 'Baldwin Park' as such, including those having possible rights as reversioners and abutting or contiguous property owners who would be

subjected to special damage by any diversion from the use specified in the grant, the surrender or conveyance of such rights and interests by appropriate waivers, releases, deeds or condemnation proceedings." *Id.* at 820.

Plaintiffs read too much into the *Baldwin* decision for purposes of Count II.  The Michigan Supreme Court did not address procedural due process, let alone determine that the neighboring landowners possessed interests protected by the Due Process Clause of the Fourteenth Amendment.  While the holding in *Baldwin* may have some bearing on Plaintiffs' state-law claims, *see generally* 19A MICH. CIV. JUR. PARKS AND COMMONS § 29 (citing *Baldwin* for the proposition that "[a] landowner whose property abuts a park has the right to seek the aid of a court to prevent the subversion of the park to a foreign use, contrary to the donor's intent."), the decision does not help Count II survive.

The Court concludes that Plaintiffs have not identified an interest protected by the Due Process Clause of the Fourteenth Amendment and have concomitantly failed to satisfy the first element of their claim.  Plaintiffs have, at most, demonstrated an "abstract need or desire" to receive notice as self-appointed stewards of the use of the neighboring Park, which is an insufficient basis to support the first element of their due process claim.

***No Deprivation of Protected Interest.***  Even assuming arguendo that Plaintiffs have a protected property interest in the use of the Park, the record before the Court does not support the conclusion that they were deprived of this interest.  The September 8, 2023 Quit Claim Deed conveying the Park to the Township specifically provided that the conveyance was subject to "Building and Use Restrictions" as set forth in the five deeds from Gilbert, the Stulens, and the Lautners.  The Quit Claim Deed further provides that the Township "by acceptance of this deed, hereby covenants to keep [the Park] open as a public park and available to residents of Grand

17

Traverse County in perpetuity" and that "[v]iolation of any of the deed restrictions shall trigger a right of reentry."  And Plaintiffs themselves acknowledge that the Park remains open for use by County residents.  On the record before this Court, it appears that the Park is still being used as a park.

***Adequate Procedural Due Process was Afforded.***  Last, even assuming arguendo the presence of a protected interest and the deprivation of that interest, the record does not support the conclusion that the process provided to Plaintiffs before the conveyance violated their rights under the Fourteenth Amendment.  In *Shoemaker v. City of Howell*, 795 F.3d 553, 557 (6th Cir. 2015), the plaintiff received mailed notices of violation and door-hanger notices, which informed him of the nature of the alleged violation and the relevant section of the city code.  While the city conceded that the notices of ordinance violation issued to the plaintiff did not fully comport with the requirements laid out in the city code, the Sixth Circuit agreed that no procedural due process violation occurred because the plaintiff was "clearly aware that the City considered him to be in violation of the Ordinance[.]"  *Id.* at 560.  Similarly, in *Dubuc v. Township of Green Oak*, 406 F. App'x 983, 987 (6th Cir. 2011), the Sixth Circuit affirmed an award of summary judgment on a procedural due process claim against a township, holding that the plaintiffs "cannot claim that they did not have prior notice of this alleged deprivation, as they have admitted that [the plaintiffs] submitted letters with information regarding the nonconforming use of the property, [which] shows that [the plaintiffs] had actual notice of the impending determination."

Here, too, construing the evidence in the light most favorable to Plaintiffs, there is no genuine dispute that Plaintiffs were aware of the various municipal hearings and their opportunity to comment, and they also attended some hearings and provided comments before the transfer occurred.  The record indicates that Plaintiffs had actual notice and realized opportunities to be

heard.  Accordingly, Plaintiffs have not satisfied the third element of their procedural due process claim.

For these reasons, the Court concludes that the record, taken as a whole, could not lead a rational trier of fact to find for Plaintiffs on their due process claim.  Assuming Plaintiffs have standing to present their due process claim in Count II, summary judgment in Defendants' favor is warranted.

**3.**     **Dismissal of State-Law Claims**

In *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), the United States Supreme Court "established the doctrine of supplemental jurisdiction as a matter of federal common law," holding "that a federal court can decide a state-law claim that forms part of the same 'case or controversy' as a claim over which the court has jurisdiction."  *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).  The doctrine of supplemental jurisdiction was codified in 28 U.S.C. § 1367, which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Conversely, § 1367(c) provides that "district courts may decline to exercise supplemental jurisdiction" if:

> (1) the claim raises a novel or complex issue of State law;
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
>
> (3) the district court has dismissed all claims over which it has original jurisdiction; or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1–4).

Supplemental jurisdiction "'is a doctrine of discretion, not of plaintiff's right.'" *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) (citation omitted).  A district court's discretion in deciding whether to exercise supplemental jurisdiction "is bounded by constitutional and prudential limits on the use of federal judicial power." *Musson*, 89 F.3d at 1254.  "A district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests of judicial economy against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (citation omitted). "Where an action in federal court includes both federal and pendent state claims and the court dismisses the federal claims before trial on a motion for summary judgment, the pendent state claims are ordinarily dismissed as well." *Williams v. City of River Rouge*, 909 F.2d 151, 157 (6th Cir. 1990) (citations omitted).

Having resolved the sole federal claim in this case, the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims in Counts I and V, including Plaintiffs' embedded request for injunctive relief.  The Court is persuaded that the balance of considerations, particularly Michigan's interest in interpreting and applying its own property law, points to dismissal of these claims without prejudice to re-filing in state court.  *See, e.g., Widgren v. Maple Grove Twp.*, 429 F.3d 575, 586 (6th Cir. 2005) (affirming the district court's resolution of cross-motions for summary judgment and deciding that the district court "did not abuse its discretion in declining to exercise supplemental jurisdiction over the state-law issues based on its consideration of the interests of justice and comity best served by a state court's resolution of the remaining state law claims").

Plaintiffs query whether this Court could "perhaps … certify the question to the Michigan Supreme Court rather than divesting itself of jurisdiction" (ECF No. 78 at PageID.941).  Their

query is unavailing.  Under the relevant Michigan court rule, "[w]hen a federal court … considers a question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent, the court may on its own initiative or that of an interested party certify the question to the Court."  MICH. CT. R. 7.308(a)(2).  *See also* W.D. Mich. LCivR 83.1 (describing certification procedure).  Plaintiffs do not assert that their claims concern uncertain questions of state law. Plaintiffs do not supply authority that would otherwise support their request, and the Court discerns no proper basis for staying this matter to pursue certification.

### III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' motions for summary judgment (ECF Nos. 55 & 59) are GRANTED as to Plaintiffs' federal claim in Count II, which is dismissed with prejudice; and DISMISSED AS MOOT as to Plaintiffs' state-law claims in Counts I and V.

**IT IS FURTHER ORDERED**, pursuant to 28 U.S.C. § 1367(c)(3), that this Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims, which are dismissed without prejudice to re-filing in state court.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment as to Count I (ECF No. 62) is DISMISSED as moot.

Dated:  March 24, 2025                                  /s/ Jane M. Beckering
                                                       JANE M. BECKERING
                                                       United States District Judge